UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| V.B. and R.B., individually and as next Friends of S.B., <br> Plaintiffs, <br><br> v. <br><br> MONROE BOARD OF EDUCATION, <br> Defendant. | CIVIL ACTION NO.: <br> 3:22cv174(AWT) <br><br> JAN 31 2022 PM3:18 <br> FILED - USDC - BPT - CT <br><br> January 31, 2022 |

# COMPLAINT

## I. PRELIMINARY STATEMENT

This civil action is an appeal of the December 15, 2021 Final Decision and Order ("Final Decision") of State of Connecticut Special Education Hearing Officer Susan Dixon, a copy of which is annexed as Attachment A. This appeal is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, as well as Conn. Gen. Stat. §§10-76h(d)(4) and 4-183. The Plaintiffs, VB and RB, parents of a student with a disability SB, are seeking reversal of the findings and remedy ordered by the hearing officer for the deprivation of a free appropriate public education for the 2018-2019, 2019-20, and 2020-21 school years and an order granting a complete remedy. Plaintiffs are further asserting claims pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504").

## II. JURSIDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 20 U.S.C. §§1415 (i)(2) and (3), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) as all parties reside or are situated in the State of Connecticut and the Plaintiffs' claim arose in the State of Connecticut.

## III. PARTIES

3. SB is a natural person and a 14-year-old student ("Student"); his mother is VB and his father is RB. The Student and his family reside in Monroe, CT.

4. The Monroe Board of Education ("Board") is a local educational agency ("LEA") and a board of education established under the laws of the State of Connecticut. It is responsible for providing an education to students residing in Monroe, and is required to provide a free appropriate public education ("FAPE") to students in its district who have disabilities pursuant to IDEA. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), also requires the LEA to provide FAPE, which is defined differently under Section 504 than under the IDEA, and not to discriminate or retaliate against students with disabilities. The Board receives federal financial assistance from the United States Department of Education in order to operate its educational programs, including its special education programs.

## IV. PLAINTIFFS' CLAIMS

5. The LEA must provide all students who are eligible for special education under the IDEA with an appropriate education via an individualized education program ("IEP"). Eligibility is decided and IEPs are drafted by Planning and Placement teams ("PPTs") composed of specific Board personnel, the parents, and the student, when appropriate. The Board must comply with all procedural aspects of the IDEA, must evaluate students in all areas of suspected disability, and must implement the student's IEP. The Board failed to meet its obligations in these three areas, but HO Dixon did not recognize all of the Board's violations and did not order appropriate remedies.

**COUNT ONE –** *Reversal of the Hearing Officer's Decision Regarding the Extent of Denial of FAPE and the Remedies for that Denial*

6. The following aspects of the Final Decision and Order are erroneous:

- Many of the findings of fact.
- That the Board's denial of FAPE was due to COVID. (Final Decision and Order #2)
- That there was no denial of FAPE as a result of any claimed failure to timely evaluate the Student and that the Board conducted evaluations in a reasonable timeframe for speech and language, social, auditory processing, and academic achievement. (Final Decision and Order # 3 and 4)
- That the Board did not fail to timely provide the Student with an auditory processing device as an accommodation. (Final Decision and Order #5)
- That no remedy was required for the Board's failure to provide appropriate related services from February to June 2020. (Final Decision and Order #6)
- That the Board failed to implement IEPS only with respect to speech and language services. (Final Decision and Order #7)
- 

The Board's Denial of FAPE was Long-standing and not solely due to the COVID emergency.

7. The Board did not provide related services throughout most of the time period from September 2018 through June 3, 2020, with the exception of seven speech and language sessions. Prior to the COVID-19 emergency which closed schools on March 19, 2020, the Board did not provide speech and language services for the entire 2018-2019 school year. The Board acknowledged this denial of services at the November 20, 2018 PPT and offered to provide 10 compensatory speech and language sessions to SB. However, the Board did not provide the compensatory sessions or any other sessions during 2018-2019 school year. The Board did not provide Speech and Language sessions during Summer Extended School Year programming in 2019. During the 2019-2020 school year, the first time the Board delivered a speech and language session was on December 4, 2019. The Board delivered 7 sessions from December 4, 2019 to March 10, 2020 (skipping several sessions). During the COVID-19 emergency, from March 10, 2020 to June 3, 2020 the Board did not provide speech and language services. The

hearing officer erroneously concluded that the Board only failed to provide services from February to June 2020, due to the COVID-19 statewide school closures.

<u>The Board Failed to Permit Timely Evaluations and Violated the Parents' Procedural Rights</u>

8. The Parents disagreed with the Board's evaluations, because the Board failed to conduct three evaluations as part of their triennial evaluation in 2018, and asked for Independent Educational Evaluations ("IEEs") on November 12, 2018 in Speech and Language and Central Auditory Processing, and _February 2, 2019 in academic achievement. Those requests were granted on _April 17, 2019. When a parent disagrees with a Board evaluation, IDEA permits them to ask for an IEE. The school district then must, without unreasonable delay, either file a due process complaint to prove the appropriateness of its evaluation or ensure that the IEE is provided at public expense. 34 CFR § 300.502(b).

9. Rather than proceed as required, and either fund the evaluations or file a due process complaint, the Board forced the parents to file a due process complaint on December 20, 2018. On April 17, 2019 the Board granted IEEs and requested that hearing number 19-0292 be dismissed. Three IEEs were granted in the areas of speech and language, auditory processing and academic achievement. The Board represented to the hearing officer of due process case 19-0292 that the Board would not first conduct these evaluations itself but would grant them as IEEs per the April 17, 2019 letter to the parent. Hence, hearing 19-0292 was dismissed explicitly in reliance on the Board's representation that the IEEs requested by Parents would be provided.

10. The IEEs were subsequently severely delayed or did not happen at all. The Speech and Language IEE was conducted in February 2020, ten months after the Board granted the IEE to the Student and five years after the most recent Speech and Language evaluation in 2015. The Central Auditory Processing Disorder (CAPD) IEE was done in February 2020, ten

4

months after the Board granted the IEE to the Student and 5 years after the most recent CAPD evaluation done in 2015 . The Board severely delayed providing the SL and CAPD IEES by insisting that these evaluations be performed at the time of the Board's next triennial evaluation in March 2020 and failing to allow them to be performed without unreasonable delay. The academic achievement IEE was never provided to the Student.

11. The hearing officer's finding that the evaluations were completed in a timely manner and that any delay did not result in a denial of FAPE was erroneous. The hearing officer refused to admit evidence relevant to the Board's actions delaying the three IEEs.

12. On October 17, 2019 Parents filed a state complaint alleging that the Board delayed providing the CAPD IEE. The state complaint decision, based upon no hearing, partial and erroneous information provided by the board attorney, and no notice of or opportunity to respond to the Board's response to the complaint, was that the Board had not delayed the CAPD IEE. The hearing officer took the position that the issue of delays in the IEEs had already been decided in the state complaint, that parents were not entitled to another hearing on the matter and the hearing officer did not allow any evidence about the delays in the three IEEs. Tr. 4/23/2020 pg 70 lines 4-8 Hearing Officer: "No, but these things that you want to bring forward that had to do with this PPT and the IEP that went with it (November 20, 2018 B-1) is not relevant anymore. It's all been decided." Lines 11-13 "You brought a (state) complaint about it. You got an answer. That's it. It's done."

13.     The hearing officer's evidentiary decision was at odds with the elementary principals of issue or claim preclusion for the above reasons, and every Connecticut State Complaint decision recognizes this with the following statement at the end of the decision: "A party who has a right to request a due process hearing (that is, the parent or a local education agency) and who disagrees with this decision may initiate a due process hearing, provided that the subject of the due process hearing request involves an issue about which a due process hearing can be filed and the two-year statute of limitations for due process hearings has not expired." As demonstrated above, the IEEs were not timely or did not happen and, as a consequence, SB's IEP did not appropriately meet his needs.

The Board Failed to Timely Provide Central Auditory Processing Accommodations

14.     SB was first diagnosed with a Central Auditory Processing Disorder in July, 2013. An assistive device (an FM system) was recommended to accommodate for his trouble accessing instruction in the classroom as a result of this disorder. Auditory processing services to ameliorate his auditory processing deficits were also recommended.

15.     In February 2020, in an evaluation that was submitted to the Board, Dr. Donna Geffner recommended low-gain hearing aids in lieu of an FM system, as the Student had not received any remediation, and auditory processing services.. The low-gain hearing aids are preferrable due to their flexibility in different settings and the benefit in social situations. (B-26 pg 9, #2) The hearing officer erroneously stated that after the June 30, 2020 PPT Dr. Geffner recommended the hearing aids after the hearing

6

aids were determined to be unavailable. (Hearing Officer FOF #45) Clearly, the documentary evidence shows Dr. Geffner's recommendation of low-gain hearing aids was made in the February 2020 IEE report, and not after the June 30, 2020 PPT.

16.  SB was fitted with hearing aids for the classroom for the first time in November 2020, 9 months after Dr. Geffner's most recent report and 7 years after he was first diagnosed. This was the first time that any device was provided to address SB's auditory processing disorder. The hearing officer erroneously took the position that the Team agreed to incorporate the recommended (auditory processing) services and accommodations in the planning for the 2020-2021 school year. (Finding of Fact 45) However, the August 20, 2020 IEP prior written notice documents that Monroe denied hearing aids. (B-40 pg 9) The June 30 and August 20, 2020 IEPs were the meetings when planning for the 2020-2021 school year took place, and after two IEP meetings, the Board still refused to incorporate the recommended accommodation of a device and provision of AP services.

17.  Although services to help remediate SB's auditory processing disorder were recommended in July 2013, May 2015, February 2020, June 2020 and October 2020, none were provided until March 2021, thus negatively impacting SB's ability to access his education. The hearing officer erroneously took the position that the Team agreed to incorporate the recommended services in the planning for the 2020-2021 school year. (FOF #45) However, documentary evidence is at odds with this and auditory processing services had not been provided at the time of the filing of the due process complaint in December 2020.

18. The Hearing Officer's finding that the Board did not fail to timely provide the Student with an auditory processing device as an accommodation is erroneous. She also erroneously concluded that he received services to address this disability in a timely manner.

### The Hearing Officer's Conclusion Regarding the Provision of Related Services and the Resulting Remedy were Incorrect

19. SB's IEPs in effect during the period covered by the due process proceeding provided for the following speech and language services:

| | |
|---|---|
| Nov 20, 2018 IEP | .75 hours of speech and language weekly |
| Apr 9, 2019 IEP | .75 hours of speech and language weekly |
| Feb 2, 2020 IEP | .75 hours of speech and language weekly |
| June 30, 2020 | 1.75 hours of speech and language weekly |

20. During the period December 8, 2018 to June 3, 2020, SB received a total of 7 forty-five minute sessions of speech and language services. He should have received an additional 53 speech sessions in addition to the 10 sessions that the Board agreed to provide as compensatory education. The Board thus failed to implement 63 sessions or weeks of speech and language services for SB. The Hearing Officer's finding that only 24 sessions of an undetermined length remedy this deprivation of FAPE is therefore incorrect.

21. The hearing officer did not specify the amount of time that should be awarded to compensate SB for the missed speech and language services. If the Board had timely conducted its own evaluations or had provided the IEEs in a timely manner, then the services on SB's IEPs would have increased to address his needs. Prior to conducting the February 2020 Speech and Language evaluation, SB's IEP provided for

.75 hours/week of speech and language service. After the February 2020 Speech and Language IEE was discussed at the June 30, 2020 IEP meeting, SB's IEP provides for 1.75 hours/week of speech and language services. Nancy Schwartz, the speech and language pathologist who conducted the IEE testified that SB should be receiving 2.5 hours/week of speech and language services. In addition to the hearing officer's insufficient number of speech and language sessions, the remedy for speech and language sessions was insufficient because speech and language services prior to the June 30, 2020 IEP were based upon the outdated 2015 evaluation. Therefore the total number of hours of speech and language services required to make the Student whole is 157.5 hours (63 weeks x 2.5 hours/week).

**22.** The Board failed to provide CAPD services from December 2018 to December 2020. Due to the delay in conducting its own CAPD evaluation or providing the CAPD IEE per the April 17, 2019 letter from the Board, the Student's current needs and services in the area of CAPD were not properly determined. The Board attempted to represent that they had started providing CAPD services prior to when the hearing was filed, but services, in fact, did not begin until the end of March 2021. The hearing officer restricted the evidence to a two-year period between December 2018 to December 2020 preventing parents from giving the hearing officer the amendment to the October 2020 IEP which took place after the due process filing in December 2020. This amendment showed how much CAPD services the District agreed to provide. These decisions by the hearing officer led to the erroneous conclusion that the Board did not fail to provide CAPD services to SB.

23. SB was not provided weekly participation in a social group per the July 31, 2018 IEP. The hearing officer's erroneous decision to only admit evidence dated within the two-year claim window (December 2018 to December 2020) prevented relevant, material evidence from being considered. The hearing officer originally admitted the July 31, 2018 IEP (P-9) – which was relevant to the student's educational program within the statute of limitations --but later reversed her decision and stated it was not admitted. The July 31, 2018 IEP states that SB was to receive social group after school on Fridays. The district failed to provide weekly social group from September 2018, which is prior to the beginning of the statute of limitations, through April 11, 2019. Mother testified that parents paid for a social group for SB during December 2018 to April 2019, which is within the statute of limitations. The hearing officer should have found that the Board is required to reimburse parents for the cost of the social group.

24. Therefore, the Hearing Officer's finding that only speech and language services failed to be implemented was incorrect and her remedy for these violations was inadequate.

<u>Academic Achievement IEE was necessary to determine SB's levels of performance and lack of progress in mathematics</u>.

25. The Board subsequently asked to perform a neuropsychological evaluation, to which the Parents consented, but then took the position that its evaluation took the place of, and nullified, the Academic Achievement IEE. The Hearing Officer wrongly agreed with the Board. The Parents then obtained a math IEE from Randy Ewart and

paid for it themselves. Mr. Ewart testified that SB had not mastered 24 out of 29 of the Connecticut Common Core Sixth Grade Standards per the math evaluation conducted in July 2020, after SB's seventh grade year. Mr. Ewart testified that there was no data in the Southport Progress Reports or the IEPs he reviewed. In addition, Mr. Ewart testified that the Goals and objectives in the IEP were not appropriate for SB. (Tr. April 23) The hearing officer should have found that the Math IEE conducted by Randy Ewart, paid by parents, should be reimbursed by the District.

26. Many of the hearing officer's findings of fact are erroneous.

27. The Board is responsible to show through a preponderance of the evidence that the Board provided FAPE, but the Board did not. Many statements made by the Board's witness, Darleen Fensore, were erroneous and inconsistent with the documentary evidence.

**COUNT II** – *Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794*

28. Plaintiffs repeat and reallege paragraphs 1-27 as if fully set forth herein.

29. By the actions described above, the Board did not meet SB's needs as adequately as the Board met the needs of non-disabled students, specifically because it failed to provide appropriate special education and accommodations that would permit SB to access his education.

30. The Board intentionally discriminated against SB and was deliberately indifferent to a strong likelihood that SB's federal rights would be violated, because, although it was clearly contrary to law:

a.  The Board deliberately delayed evaluating SB in all areas of suspected disability; and

b.  The Board deliberately failed to provide services that it knew SB required to be educated.

31.  By reason of the above violations, the Parent is entitled to both compensatory education and damages.

## V. CLAIMS FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand:

a.  Assumption of jurisdiction over this matter by the Court, including acceptance and review of the administrative record;

AS TO COUNT ONE:

b.  Reversal of the Hearing Officer's findings and remedies as set forth above, with an order for appropriate remedies;

AS TO COUNT TWO:

c.  Compensatory education for the period during which SB was denied FAPE, specifically to pay for evaluations and services that will put the SB in the position he would have been had he received appropriate intervention;

d.  Reimbursement of expenses paid by the Parents, including for services and evaluations, that they provided to appropriately educate the Student;

e.  Damages;

GENERALLY

f.    Such other and further relief as this Court deems just and proper.

                              PLAINTIFFS V.B. and R.B., individually
                               and as next friend of S.B.

By:    */s/ V.B.*
         V.B., *pro se*
         71 Ridge Dale Road
         Monroe, Connecticut 06468