UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| B., et al., : | |
| : | |
| *Plaintiffs*, : | |
| : | |
| v. : | No. 3:22-cv-174 (VDO) |
| : | |
| MONROE BOARD OF EDUCATION, : | |
| : | |
| : | |
| *Defendant*. : | |

## RULING ON MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

On this appeal from a special education due process hearing decision under the Individuals with Disabilities Education Act ("IDEA"), the plaintiffs – a middle-school student and his parents – have moved to supplement the appeal record. ECF 39. At the due process hearing, plaintiffs contended *inter alia* that the student had not been provided with a free appropriate public education ("FAPE") due to the school district having unreasonably delayed the completion of independent educational evaluations ("IEE") and that this resulted in a substantive denial of FAPE. *See* Prehearing Memo, ECF 55-1 at 11. In the final decision, the hearing officer concluded that the evaluations were reasonably timely and that plaintiffs did not present evidence to substantiate that FAPE was denied due to the alleged delay. ECF 55-2 at 676. On this appeal, plaintiffs claim that those conclusions were erroneous. Am. Compl., ECF 26 ¶ 11. Now pending is plaintiffs' Motion to Supplement the Administrative Record with exhibits that they contend were improperly excluded by the hearing officer. ECF 39.

### A. DISPUTE RESOLUTION UNDER IDEA

As discussed further below, the hearing officer appears to have excluded the exhibits on the ground that they pertained to issues adjudicated in a prior due process hearing and two state complaints, which the parents initiated under IDEA's dispute resolution provisions.

The core requirement of Part B of IDEA is that public schools must provide FAPE to all children with disabilities. *See* 20 U.S.C. § 1412(a)(1)(A). The "centerpiece" and "principal mechanism" is the development of an individualized education program ("IEP"), *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016), that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391, 394 (2017). IDEA requires a comprehensive initial evaluation to develop the IEP and reevaluations at least once every three years, which are colloquially known as planning and placement team meetings ("PPTs"). *D.S. By & Through M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 157 (2d Cir. 2020) (citing 20 U.S.C. § 1414). "As another procedural safeguard, the parent of a child with a disability has an absolute right to obtain an IEE of their child, 34 C.F.R. § 300.502(a)(1), and the school must consider that IEE 'in any decision made with respect to the provision of FAPE to the child,' [34 C.F.R.] § 300.502(c)(1)." *D.S. v. Trumbull* at 157-58; *see also* Conn. State Regs. 10-76d-9(a).

When a dispute arises, an organization or individual may file a "state complaint" alleging a violation of any Part B requirement by a public agency. 34 C.F.R. §§ 300.151-153. The state educational authority must investigate the complaint, provide an opportunity to submit additional information, and issue a final written decision containing findings of fact, conclusions, and reasons. 34 C.F.R. § 300.152. The written decision may include procedures for the effective implementation of the decision, potentially including corrective actions. 34 C.F.R. § 300.152(b).

Under the procedure established by the Connecticut State Department of Education, the final decision of the Bureau of Special Education ("BSE") on such a complaint cannot be appealed. *See* Complaint Resolution Process, available at https://portal.ct.gov/-/media/sde/special-education/complaint-resolution-process.pdf (last accessed Sept. 25, 2024).

Alternatively, parents and school districts may request a "due process hearing" relating to a proposal or refusal to change a child's identification, evaluation, educational placement, or the provision of FAPE.  *See* 20 U.S.C. § 1415(b)(6), (f), (h); 34 C.F.R. §§ 300.507-515; Conn. Gen. Stat. § 10-76h; Conn. State Regs. § 10-76h.  The hearing request must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action.  20 U.S.C. § 1415(b)(6)(b).  An impartial hearing officer must conduct a hearing at which the parties are entitled to introduce testimony and written evidence.  34 C.F.R. §§ 300.511-512.  The hearing officer then must issue a written final decision, and any aggrieved party may appeal to state or federal court.  20 U.S.C. § 1415(i)(2); Conn. Gen. Stat. 10-76h(d)(4).

Of particular relevance here, the Connecticut regulations provide the following evidentiary standard for due process hearings: "The hearing officer may receive any oral, documentary or tangible evidence, but the hearing officer shall exclude irrelevant, immaterial or unduly repetitious evidence."  Conn. State Regs. § 10-76h-15(a); *see also* Conn. Gen. Stat. 10-76h(c)(2) ("Except for good cause shown, the hearing officer shall limit each party to such documentary evidence and witnesses as were properly disclosed and are relevant to the issues in dispute.").

B.  **PROCEDURAL HISTORY**

Turning to the facts of this case, plaintiffs requested in November 2018 that the school district fund certain IEEs.  ECF 55-2 at 218.  Between December 2018 and December 2020, plaintiffs filed two request for due process hearings and two state complaints relating to the completion of those IEEs.

(1) The December 20, 2018 due process hearing request (#19-0292) asked the BSE to order *inter alia* that the student was entitled to IEEs at the district's expense.  *See* Decision 19-0292, ECF 55-2 at 190-91.   On April 17, 2019, the school district agreed via letter to fund IEEs in academic achievement, CAPD, and speech and language, ECF 55-2 at 188, which mooted that portion of the hearing.  ECF 55-2 at 191.  During the same proceedings, plaintiffs claimed "that the Board's delay in granting the IEEs had caused harm to the Student because the evaluations had not informed the Student's IEP planning."  ECF 55-2 at 190-91.  However, plaintiffs withdrew that claim,[1] and the claim was therefore dismissed without prejudice to refiling.  *Id.*

(2) Plaintiffs then filed a state complaint on May 13, 2019 (#19-0516) claiming *inter alia* that the school district had not provided necessary information for the student to obtain the agreed-upon IEEs.  *See* Decision 19-0516, ECF 55-2 at 216.  In its July 12, 2019 decision, the BSE sustained that claim and ordered the district to provide by July 19, 2019 "the District's IEE criteria and information where the Parent can obtain an IEE in all assessment areas listed in the April 17, 2019 letter."  *Id.* at 218.

(3) Plaintiff then filed another state complaint on October 17, 2019 (#20-0196) claiming that the school district "did not provide a CAPD IEE as agreed to in Letter dated April 17, 2019

---

[1] The hearing officer's decision indicates that plaintiffs withdrew the claim because they did not want to "be precluded from arguing these issues at a subsequent hearing." Decision 19-0292, ECF 55-2 at 191.

4

and at the PPT on 10/4/19." ECF 55-1 at 607-11. In its December 17, 2019 decision, the BSE noted that arrangements had been made to conduct the CAPD IEE since the complaint was filed, and it concluded that the delay was not due to any violation of IDEA. *See* Decision 20-0196, ECF 55-2 at 285-86.

(4) A year later, on December 10, 2020, plaintiff requested the due process hearing (#21-0208) that is the subject of this appeal, asking *inter alia* for a determination on the following questions:

> Did Monroe conduct evaluations in a reasonable timeframe after Parents signed consent for the student to be evaluated in the areas of Speech/language/social, Auditory Processing, and Academic Achievement?
>
> Did the failure to timely evaluate Student in all areas of disability cause substantive denials of FAPE for the Student?[2]

Prehearing Memo, ECF 55-1 at 11. In the final decision, the hearing officer concluded in relevant part:

> There was no evidence presented to substantiate that FAPE was denied as a result of any claimed failure to timely evaluate Student.
>
> The Board conducted evaluations in a reasonable timeframe after the Parents signed consent for the Student to be evaluated in the areas of speech and language, social, auditory processing and academic achievement.

Decision 21-0208, ECF 55-2 at 676.

Plaintiffs filed this appeal in January 2022 claiming in relevant part that "[t]he hearing officer's finding that the evaluations were completed in a timely manner and that any delay did not result in a denial of FAPE was erroneous." Am. Compl., ECF 26 ¶ 11. Plaintiffs now seek

---

[2] This is similar to the claim that plaintiffs raised in the first due process hearing (#19-0292) that was denied without prejudice to refiling. *See* footnote 1 *supra*.

to supplement the record with seven exhibits that they contend were relevant to those issues but were improperly excluded by the hearing officer.  ECF 39.

## C. LEGAL STANDARD

IDEA provides that in an action challenging an administrative decision after a due process hearing, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  As noted in the seminal case, the "starting point" is the administrative record, but permissible reasons for accepting additional evidence may include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, *an improper exclusion of evidence by the administrative agency*, and evidence concerning relevant events occurring subsequent to the administrative hearing."  *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984) (emphasis added).  In exercising its discretion whether to consider additional evidence, the district court "must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." [3]  *Id.* at

---

[3] This caution is consistent with general limitations on the nature of the district court's review. On § 1415 appeals, the district court has a "circumscribed" role, that "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete de novo review."  *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (citations omitted).  Although the district court's decision must be based on a preponderance of the evidence, § 1415(i)(2)(C)(iii), "it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (citation and internal quotation marks omitted).  Accordingly, "the district court's deference to the state agency is greatest with respect to well-reasoned determinations of fact and subjective credibility assessments, and such deference is least with respect to issues of law and other issues that are not well-reasoned."  *Dervishi v. Stamford Bd. of Educ.*, No. 3:21-cv-1184 (SVN), 2023 WL 2712610, at *5 (D. Conn. Mar. 30, 2023) (summarizing discussion in *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d at 244).

791; *see also Greenwich Bd. of Educ. v. G.M.*, No. 3:13-cv-235 (CSH), 2015 WL 5684023, at *3 (D. Conn. Sept. 28, 2015) (parties should not be permitted to use federal court proceeding to patch up holes in administrative case). "The party seeking to supplement the record carries the burden of establishing that its proffered evidence is probative of the issues before the court and of explaining why the evidence was not presented in the administrative proceeding." *Greenwich Bd. of Educ. v. G.M.*, at *3.

### D. DISCUSSION

Plaintiff contends that Parent's Exhibits P24, P35, P37, P38, P41, and P144 were improperly excluded by the hearing officer despite being relevant to the IEE timeliness issues described above. *See* ECF 39-4 to 39-10, respectively. As noted above, the Connecticut regulations provide that the due process hearing officer "may receive any oral, documentary or tangible evidence, but the hearing officer shall exclude irrelevant, immaterial or unduly repetitious evidence." Conn. State Regs. § 10-76h-15(a).

Here, the hearing officer excluded evidence dated prior to the December 17, 2019, which was the date of decision on the second state complaint (#20-0196). When the student's mother, appearing at the due process hearing *pro se*, attempted to introduce testimony concerning her ongoing efforts to obtain the IEEs, the hearing officer precluded the testimony on the basis that it related to matters already adjudicated, *see* transcript excerpts below, and also declined to admit certain exhibits. *Compare* ECF 55-2 at 666 (list of admitted exhibits), *with* ECF 55-1 at 106-110 (list of parents' proposed exhibits). They include:

| | |
|---|---|
| ECF 39-5 (P24): | May 13, 2019 State Complaint in #19-0516 |
| ECF 39-6 (P35): | November 2919 parent email to district selecting speech/language evaluator; January 2020 parent email to evaluator seeking proposal |
| ECF 39-7 (P36): | January 22, 2020 parent emails to/from district re: evaluators |
| ECF 39-8 (P38): | January 22, 2020 parent email to district re: evaluators |
| ECF 39-9 (P41): | April, May, and July 2019 emails to district re: CAPD evaluator |

   ECF 39-10 (P144):  January 26, 2020 Agreement to Change IEP re: CAPD intervention

The reasoning behind those evidentiary rulings is not explained in the final decision, but the hearing officer addressed the issue in the hearing transcript as follows:

> HEARING OFFICER: . . . [There] was a complaint filed to the BSE and . . . it was decided by the BSE staff and there was a direction given to the Monroe Board and it's different than this kind of hearing that we have here today, but slightly. But anyway all of this has been decided. It's water over the dam.
>
> PARENT: Well, if [the IEE] wasn't done – the [BSE officer] told me –
>
> HEARING OFFICER: No, but the things that you want to bring forward that had to do with this PPT and the IEP that went with it is not relevant anymore. It's all been decided.
>
> PARENT: Well, okay. Well, moving –
>
> HEARING OFFICER: You brought a complaint about it. You got an answer. That's it. It's done.
>
> PARENT: I got an answer but it wasn't done. And I want to – this is part of the – part of my claim is that the evaluations took so long to get done and even though they were promised that it hindered my son from receiving a free and appropriate education.

*Id.* at 468:18-469:20. The hearing officer reiterated this evidentiary ruling a few minutes later, as follows:

> HEARING OFFICER: What you're saying right now is, as I'm understanding what happened, is that you had problems in the fall of 2018, you wanted evaluations done, you took it to the Board of Education, they granted you the evals, they were ordered to be done. And what your problem is right now is that they were not done in a timely fashion to – and then that thwarted your son's progress in some way. This is your claim.
>
> PARENT: Um-hum.
>
> HEARING OFFICER: I have to decide whether that's true or not, or that I can find that happened. I have to find that it – that this delay had an effect on him. Can you understand that you need to stick to that and not go back over old ground where you're not – you don't need to go back over these things that you brought to that hearing. You need to focus on going forward of what your complaint's all about.

> You know, I cannot give you legal advice but on the other hand I cannot allow this testimony because it's not relevant to the subject that you brought here today which is whether [your] son is getting a FAPE, has got it lacking in some services from the day of the first statute of limitations limiting day to now. And I'm not giving you advice at all but I'm going to not allow you any more to keep harping back to the irrelevant things that you keep trying to put on the record. I want all that stricken from the record.
>
> So now I want you to . . . focus in on what happened after you were told these things were ordered and they never – or whatever happened afterward, whether they got ordered or not, whether they got performed or not and move forward from there.
>
> PARENT: And will you –
>
> HEARING OFFICER: Anything else is going to be ruled irrelevant and you're not going to be able to testify about it from here on out. I cannot – I just can't do any other thing now. I've given you all kinds of accommodation and tried to be patient with this but it's got to stop.

ECF 53 at 473:11-475:12. The hearing officer went on to state: "[T]here is a line in the sand which is the latest [state complaint] decision, and whatever date that is is going to be the date from which you should start your – explaining what you did or did not do with regard to this case." ECF 53 at 483:2-7.

However, this logic is hard to square with the scope of the hearing officer's final decision. The prehearing memo and the hearing decision both confirm that plaintiff was seeking a determination as to whether the IEEs were timely, in addition to whether any delays resulted in a denial of FAPE. *See* Prehearing Memo, ECF 55-1 at 11; Decision 21-0208, ECF 55-2 at 676. If the hearing officer had concluded that the timeliness question was moot or that some prior adjudication regarding the reasonableness of the delay was controlling, then it would have been logical to exclude evidence concerning plaintiffs' ongoing efforts to obtain the IEEs, such as the original IEE funding request (November 2018), the school district's consent to fund the IEEs (April 17, 2019), and the BSE's finding that the district had failed to identify proposed providers

9

and IEE criteria and order to provide that information (July 12, 2019), *see* ECF 55-2 at 217-18; the district's compliance with the BSE's order (July 19, 2019), *id.* at 220-29; the filing of another complaint alleging failure to complete the CAPD IEE (October 17, 2019), *see* ECF 55-1 at 607-11; the BSE's finding that the IEE delays did not violate IDEA (December 17, 2019), ECF 55-2 at 285-86; and emails indicating that at least some of the IEEs were not yet complete as of January 2020, ECF 39-7.  However, the hearing officer did not conclude in her final decision that the timeliness issue was moot or subject to claim preclusion as a matter of law.  Instead, despite excluding timeliness evidence and not finding any facts regarding the passage of time between the IEE requests and completion, the hearing officer substantively concluded that "The Board conducted evaluations in a reasonable timeframe[.]" ECF 55-2 at 677.  She also went on to conclude that "*[t]here was no evidence presented to substantiate* that FAPE was denied as a result of any claimed failure to timely evaluate Student."  ECF 55-2 at 676 (emphasis added).

Insofar as exhibits excluded by the hearing officer were relevant to the hearing officer's conclusions, they may be added to the record on this § 1415 appeal under the category of "an improper exclusion of evidence by the administrative agency."  *See Town of Burlington*, 736 F.2d at 790.  ECF 39-5 is relevant to whether the timing was reasonable.  ECF 39-6 and 39-7 are relevant to establish timing.  ECF 39-9 is relevant to timing and reasonableness.  ECF 39-10 is relevant to whether the timing substantively affected the student's IEP.  The request to add those exhibits is therefore GRANTED.  However, ECF 39-4 is already in the administrative record at ECF 55-2 at 190-94, and ECF 39-8 is duplicative of ECF 39-7, so the request to add those exhibits is DENIED.

Lastly, regarding the school district's objection that the exhibits are unduly prejudicial, no explanation has been provided to support this bare assertion.  *See* ECF 46.  Moreover, this

case will not involve a jury, and the Court can competently evaluate the relevance and weight of this evidence without being unduly prejudiced.

### E. Conclusion

For all the foregoing reasons, plaintiff's Motion to Supplement the Administrative Record (ECF 39) is granted in part and denied in part as follows:

ECF 39-4: Denied as already in administrative record
ECF 39-5 (P24): Granted
ECF 39-6 (P35): Granted
ECF 39-7 (P36): Granted
ECF 39-8 (P38): Denied as duplicative
ECF 39-9 (P41): Granted
ECF 39-10 (P144): Granted

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 30th day of September, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge